UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLUME SERVICES INC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITE HERE,<br><br>　　　　Defendant.<br>_____/ | No. C-13-02318 YGR (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTERS [DOCKET NOS. 36 and 45]** |

Plaintiff Volume Services, Inc. dba Centerplate ("Centerplate") and Defendant UNITE HERE! Local 2 ("Local 2" or "the union") filed a joint discovery letter in which Local 2 asks the court to modify the stipulated protective order entered in this case. [Docket No. 36 (Joint Letter).] The court held a hearing on January 9, 2014. Pursuant to the court's order, the parties filed a second joint letter on January 14, 2014 in which they set forth the agreements reached regarding this dispute, as well as the issues remaining for determination by the court. [Docket No. 45 (Second Joint Letter).] The court now enters the following order on the parties' joint letters.

**I. Discussion**

Centerplate is a vendor that contracts with the San Francisco Giants ("the Giants"), a non-party major league baseball team. Centerplate provides concession services at AT&T Park, the Giants' home field. Local 2 represents Centerplate's concession-stand employees. Centerplate and Local 2 have been actively involved in collective bargaining negotiations since March 2013.

Against this backdrop, Centerplate filed the current action. The main issue in this lawsuit is whether Local 2's one-day strike on May 25, 2013 and intermittent picketing at AT&T Park were for unlawful purposes. Centerplate alleges that Local 2 conducted those activities to, *inter alia*, force Centerplate and the Giants to enter into an illegal agreement, the "Successorship Addendum," in violation of Sections 8(b)(4)(A) and 8(e) of the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 158(b)(4)(A), 158(e). Centerplate also alleges that Local 2 is engaged in a campaign to threaten and coerce Centerplate into ending its business relationships with certain non-profit organizations (NPOs) in violation of Section 8(b)(4) of the LMRA, 29 U.S.C. §§ 158(b)(4).

Centerplate seeks discovery regarding Local 2's bargaining proposals, negotiations, and picketing-related activity, arguing that such information is relevant to its claims pursuant to *Frito-Lay, Inc. v. Local Union No. 137*, 623 F.2d 1354, 1362-63 (9th Cir. 1980). In *Frito-Lay*, the Ninth Circuit held that in order for an employer to recover damages for an unlawful strike, an "illegal object [need not] be the sole cause of [a] strike"; "it [need only] be a 'substantial' cause" or "'materially contribute' to the injury, 'notwithstanding other factors contributed also.'" *Id.* (citing *Mead v. Retail Clerks Local 839*, 523 F.2d 1371, 1376-77 (9th Cir. 1975)).

Local 2 does not dispute the relevance of discovery regarding the purpose and goals of strike and picketing activity, nor does it argue that such discovery should be completely barred. Instead, it urges the court to recognize a "collective bargaining privilege" and modify the protective order to limit Centerplate's right to discover information about its bargaining strategy. Local 2 cites numerous National Labor Relations Board ("NLRB" or "Board") decisions in which the Board protected such information from disclosure. (Joint Letter 2-3.) Local 2 argues that forcing the union to reveal its bargaining strategy would be severely prejudicial to its bargaining position, citing *Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977). In *Berbiglia,* the Board noted that "[i]f collective bargaining is to work, the parties must be able to formulate their positions and devise their strategies without fear of exposure." *See also Harvey's Wagon Wheel, Inc. v. NLRB*, 550 F.2d 1139, 1143 (9th Cir. 1976) (holding that FOIA exemption applied to NLRB-collected employee affidavits, noting that such statements should "normally be protected from disclosure as a matter of law. Otherwise, the danger of their withholding relevant information for fear of exposing crucial material regarding

2

1  pending union negotiations would be manifest."). Local 2 notes that the parties convene for
2  collective bargaining negotiations approximately once a month, and that many central issues remain
3  unresolved, including wages, healthcare, and job security. (Joint Letter 1.)

4  At the January 9, 2014 hearing, the court noted that the authority cited by Local 2 does not
5  support the existence of a collective bargaining privilege under federal law.[1] If no such privilege
6  exists, then information about Local 2's bargaining positions is not exempt from disclosure if it is
7  otherwise relevant. Nevertheless, the court recognizes the important concerns expressed in *Harvey*
8  and the Board decisions: when an employer and a union are engaged in collective bargaining,
9  discovery by the employer into its opponent's negotiation plans would severely prejudice the
10 union's ability to bargain effectively. For this reason, when crafting the scope of relevant discovery
11 under such circumstances, the court should exercise particular caution and care in balancing the
12 competing concerns. A court should permit discovery that is relevant to the claims or defenses at
13 issue, but with appropriate limits so as not to unduly jeopardize the union's bargaining ability.

14 Following the hearing, the court ordered the parties to meet and confer to define the scope of
15 discovery in light of the court's rulings. The court also ordered the parties to appear again later that
16 day to place any agreements on the record and to argue any remaining disputes. Upon reconvening,
17 the court determined that counsel had failed to comply with the court's instructions. The court
18 ordered the parties to resume discussions and to submit a joint letter by January 10, 2014 setting
19 forth all agreements the parties had reached and stating their respective positions regarding any
20 remaining disputes. The parties submitted a joint letter on January 10, 2014, which the court struck
21 for failure to comply with the court's order. [Docket No. 44.]

---

[1] Federal Rule of Evidence 501 provides federal courts with "the flexibility to develop rules of privilege on a case-by-case basis." *Trammel v. U.S.*, 445 U.S. 40, 47 (1980). However, the federal "policy favoring open discovery requires that privileges must be 'strictly construed.'" *Dowling v. Am. Haw. Cruises, Inc.*, 971 F.2d 423, 425 (9th Cir. 1992) (quoting *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990)). The Supreme Court has cautioned courts not to exercise the authority granted by Federal Rule of Evidence 501 "expansively," particularly where "it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pa.*, 493 U.S. at 189. No court has recognized a collective bargaining privilege under federal law. *See NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 314 (D.D.C. 2009) (holding "there is no authority adopting any privilege for bargaining strategy in federal courts").

1    On January 14, 2014, the parties submitted another joint letter in which they set forth certain
2 agreements they had reached, as well as their positions regarding two remaining disputes. (Second
3 Joint Letter.) The disputes are 1) "[w]hether pre-trial discovery may be taken as far as what are the
4 'bottom line' positions of either party with respect to any particular contract proposals or bargaining
5 demands, i.e., whether the party is willing to amend, modify, or withdraw a particular demand,"
6 including demands regarding the Successorship Addendum and proposals regarding NPOs, and 2)
7 "[w]hether Union witnesses and participants in union bargaining caucuses or private meetings with
8 employees can be asked about who said what in these meetings" regarding the union's bargaining
9 strategy with respect to the Successorship Addendum and NPO proposals, as well as discovery into
10 who else was present at the meetings. (Second Joint Letter 2.)

   With respect to the first dispute, Centerplate is indeed entitled to ask the union about its
"bottom line" bargaining positions regarding the Successorship Addendum and NPO proposals. In
other words, Centerplate may ask what are essentially "yes or no" questions about whether Local 2
is willing to amend, modify, or withdraw its demands on those two subjects. However, Centerplate
may not ask for details about bargaining demands or proposals regarding those subjects. With
respect to the second dispute, Centerplate may ask witnesses about what union officers and members
of the bargaining team said regarding the Successorship Addendum and NPO proposals, as long as
the questioning is consistent with the scope of discovery on these topics as set forth above.
Centerplate may not ask about statements made by other union members (that is, individuals who are
not officers or members of the bargaining team) regarding bargaining on any issues. Since such
individuals are not empowered to take positions on behalf of the union, there is no legitimate
purpose in asking about what they said. In addition, Centerplate may ascertain which union officers
and members of the bargaining team were present at bargaining caucuses and private meetings with
employees, but may not seek the identity of other union members present at such meetings.[2] This

---

[2] The parties also made certain agreements limiting Centerplate's deposition questioning to the extent the court permits discovery as to the two disputed areas. (*See* Second Joint Letter 2-3.) The court hereby adopts and orders those five limitations here.

4

ruling is made without prejudice to Centerplate's renewing its request for permission to seek such information upon a showing of good cause, as stated at the hearing.

## II. Conclusion

For the foregoing reasons, Centerplate may take limited discovery as to Local 2's bargaining positions in conformance with this order.

IT IS SO ORDERED.

Dated: January 28, 2014



_____
DONNA M. RYU
United States Magistrate Judge

5